444 A.2d 1281

**COMMONWEALTH of Pennsylvania ex rel. Dorothy K. LUTZ**

v.

**J. Elmer LUTZ, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1981.

Filed April 23, 1982.

474

Daniel E. P. Bausher, Reading, for appellant.

David S. Rasner, Philadelphia, for appellee.

Before BECK, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order directing appellant to pay support to his appellee-wife and a judgment entered pursuant to that order. For the reasons that follow, we: (1) vacate the order of March 27, 1981 and the judgment entered April 9, 1981; and (2) reinstate and affirm the order of November 2, 1979.

Following their marriage on December 24, 1974, the parties resided in the second-floor apartment of appellant's house, adjacent to his funeral home. Marital difficulties arose in 1975, stemming in part from appellant's manic depressive condition and his purported impotence. The parties moved to a lavish, newly-constructed home at a local country club in November, 1976. Despite the new surroundings, appellant remained depressed and despondent. Three months later, the parties returned to the first-floor apartment of appellant's house, where their relationship deteriorated further. Appellant refused to discuss their marital problems. He also refused to socialize or entertain visitors. He accused appellee of being "not Godly," and wrote down

the seven deadly sins and asked appellee where she fell with respect to them. In October, 1977, appellant invited a young couple he had met at Alcoholics Anonymous into the second-floor apartment. Shortly thereafter, appellant moved in with the couple. Later that month, appellant accused appellee of being a drug addict and of trying to poison him. He also informed her that she was part of his illness and that God had told him that their marriage was "no good." After consulting her doctor, appellee left the marital residence on October 24, 1977 and instituted this action for support. After a series of hearings, the lower court, on November 2, 1979, issued findings of fact, conclusions of law and an order directing appellant to pay appellee $300 per week in support retroactive to April 28, 1978. Appellant filed exceptions to the findings and order, and the lower court ordered argument before the court en banc. On August 21, 1980, the lower court, *sua sponte*, ordered appellant to show cause why his exceptions should not be stricken as unauthorized by the Rules of Civil Procedure. The lower court subsequently determined that its order of November 2, 1979 was final and that no exceptions could be filed. It decided, however, to treat appellant's exceptions as a petition for reconsideration, and held argument thereon. On March 27, 1981, the lower court issued new findings of fact, and an order requiring appellant to pay $300 per week from April 28, 1978 until January 1, 1979, and $350 per week thereafter. This appeal followed.

■ Appellant contends first that the lower court erred in holding that exceptions were precluded by the Rules of Civil Procedure. We agree. "There is no question but that exceptions must be filed to a support order to preserve objections for appeal." *Paul v. Paul*, 281 Pa.Superior Ct. 202, 210 n.11, 421 A.2d 1219, 1223 n.11 (1980).[1] *See also Commonwealth v. Bankert*, 295 Pa.Superior Ct. 423, 441 A.2d 1304 (1982). By treating appellant's exceptions as a

1. This holding in *Paul* was abrogated by the promulgation of Pa.R. Civ.P. 1910.11(k) (effective July 22, 1981). Explanatory Note to Pa.R.Civ.P. 1910.11. The new rule of civil procedure is not applicable to this case.

petition for reconsideration, however, the lower court, in fact reviewed its decision in light of appellant's exceptions. Accordingly, rather than remanding the matter to allow the lower court to entertain appellant's exceptions, we will review the lower court's reconsideration insofar as it responds to the issues raised by the exceptions.[2]

■ "Our standard of review in support cases is limited, and a support order, if supported by competent evidence, will not be reversed absent an abuse of discretion by the lower court." *Commonwealth ex rel. Kinsey v. Kinsey*, 277 Pa.Superior Ct. 156, 158, 419 A.2d 708, 710 (1980). Because "the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits," this Court's function is to determine whether there is sufficient evidence to sustain the lower court's findings of fact or whether the lower court has misapplied the law. *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa.Superior Ct. 66, 67, 297 A.2d 158, 159 (1972). *See also Commonwealth ex rel. McNulty v. McNulty*, 226 Pa.Superior Ct. 247, 251, 311 A.2d 701, 703 (1973).

■ Appellant contends that the lower court abused its discretion in finding that appellee had made a good faith offer to return. We disagree. It is well-settled that where parties are separated, "the party who would resume marital relations carries the burden of proving by clear and convincing evidence that [she] made a bona fide offer of reconciliation." *Clark v. Clark*, 172 Pa.Superior Ct. 5, 7, 92 A.2d 236, 237 (1952). *See also Urbanski v. Urbanski*, 206 Pa.Superior Ct. 329, 213 A.2d 219 (1965). "Broad discretion is lodged in the court below in determining the bona fides, which is the very essence of the offer." *Commonwealth ex rel. Kenny v. Kenny*, 169 Pa.Superior Ct. 152, 153, 82 A.2d 552, 553 (1951).

2. In its reconsideration, the lower court, reversing its earlier ruling, held that appellee had good cause for leaving the marital residence. It did not, however, change the date the support order was to commence. Because appellant's support obligation was set at the time of appellee's good faith offer to return, we need not determine whether her original departure was proper, thus entitling her to support as of that date.

Moreover, the good faith and sincerity of an offer of reconciliation are often best measured by the parties' conduct before and after the hearing. *Commonwealth ex rel. Miller v. Miller*, 209 Pa.Superior Ct. 196, 223 A.2d 917 (1966). At an April 28, 1978 hearing, appellee offered to return to the marital home provided appellant continued on his medicine. Two days after the hearing, she informed appellant, through counsel, that she was prepared to return unconditionally. Appellant, however, doubted the viability of the relationship and suggested divorce. Appellee replied that she had no intention of terminating the marriage, and reiterated her desire to immediately return to appellant. Under these circumstances, we cannot find that the lower court abused its discretion in finding appellee's offer to return genuine.[3]

Appellant contends next that the lower court abused its discretion in finding appellee presently unable to work. We disagree. Appellee's treating physician testified that she was physically unable to work because of blood pressure variations, mild congestive heart failure resulting from high blood pressure, ankle edema, and migraine headaches. Another physician, who had examined appellee at appellant's request, testified that appellee's blood pressure was in the high normal range, but that she was suffering from edema and tension headaches. He further opined that until her headaches were treated, she would not be able to concentrate or "be up and about." Additionally, an independent physician, who examined appellee at the court's request, reported that "physically, [appellee] is probably capable of returning to her previous work as an LPN; however, emotionally, she is not." Thus, contrary to appellant's assertion, all medical evidence presented showed appellee to be pres-

3. Appellant contends that the lower court failed to consider that appellee testified falsely. We disagree. Although the lower court specifically found that appellee had misrepresented her status as a registered nurse, it does not follow that it must disbelieve all of her testimony. It is well-settled that the finder of fact may accept or reject any portion of a witness' testimony. *Commonwealth v. Oates*, 448 Pa. 486, 490, 295 A.2d 337, 339 (1972). We are satisfied that the lower court properly evaluated appellee's credibility.

ently unemployable. Appellant's contention is simply unsupported by the record.

Appellant contends that the lower court erred in setting his support obligation at $300 per week from April 26, 1978 until January 1, 1979, and $350 per week thereafter. To the extent that the lower court modified the support to $350 per week, we agree. The function of a court in a proceeding for support is not to punish a husband, but to fix an amount which is reasonable and proper for the comfortable support and maintenance of his wife. *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 395, 237 A.2d 181, 186 (1967). In determining the appropriate amount of support, the court must look to the defendant's property and earning capacity, as well as the parties' station in life. *Commonwealth ex rel. McGavic v. McGavic*, 222 Pa.Superior Ct. 246, 249, 294 A.2d 795, 797 (1972). Although a support order for a wife alone may not exceed one-third of the husband's earning capacity, the maximum is lifted when children are also receiving support. *Commonwealth ex rel. Gitman v. Gitman, supra; Commonwealth ex rel. Litsky v. Litsky*, 214 Pa.Superior Ct. 215, 251 A.2d 729 (1969); *Commonwealth ex rel. Iezzi v. Iezzi*, 200 Pa.Superior Ct. 584, 190 A.2d 334 (1963).

In its November 2, 1979 order, the lower court found that appellee required and appellant could afford $300 per week. The court determined that the parties had lived a comfortable existence throughout their cohabitation as a result of appellant's sizeable income from his funeral parlor. The court also found that appellee was unable to work. We are satisfied that the lower court did not abuse its discretion in setting appellant's support obligation at $300 per week.

In response to appellant's exceptions, the lower court included certain facts omitted in its initial findings of fact,[4] and affirmed its original order finding appellee in need of,

---

4. In response to appellant's exceptions, the lower court found that appellant was financing the college education of two of his children from a prior marriage.

and appellant capable of providing $300 per week. Then, however, based solely upon evidence of appellant's 1979 income submitted after the first order, the lower court raised appellant's obligation to $350 per week as of 1979. As we have noted, the lower court erred in refusing to allow appellant to file exceptions, and in treating the exceptions as a petition for reconsideration. The only issues properly before the court were those raised in exceptions, and the only evidence properly before the court was that presented at the hearings. The court had no petition before it alleging changed circumstances thus enabling the court to accept more evidence and reevaluate the parties' conditions. The court was required to rule on appellant's exceptions based solely upon the evidence available to it at the time of the original order. By accepting new evidence and gratuitously raising appellant's obligation, the lower court abused its discretion. Accordingly, we must vacate the order of March 27, 1981 modifying appellant's support obligation, and the judgment entered thereupon, and reinstate the order of November 2, 1979.

Order of March 27, 1981 and judgment entered on April 9, 1981 are vacated. Order of November 2, 1979 reinstated and affirmed.