540 A.2d 269

**Judith AKERS, Appellee,**

v.

**Jerome AKERS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1987.

Filed Feb. 16, 1988.

Reconsideration and Reargument Denied
April 26, 1988.

2

Verdell Dean, Pittsburgh, for appellant.

Paul Kutcher, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and JOHNSON and MONTGOMERY, JJ.

PER CURIAM:

This is an appeal from an order reducing appellant's support obligation for the two minor children of his first marriage. Finding no error in the proceedings below, we affirm.

■ This case began in 1972 with a support order of $150.00 per month for appellee and one child. Subsequent modifications were made when the second and third children were born and in 1985 when the first child reached the age of 18. By this time, the support order included only the children. On February 28, 1986, appellee filed a petition for an increase alleging that appellant had income from a second job which he had concealed. The Hearing Officer recommended an order of $450.00 per month plus $75.00 on arrearages of $8,385.00. Appellant filed exceptions which were dismissed and an order was entered adopting the recommendation of support, but lowering the arrearages to $7,500.00. Appellant did not appeal this order.[1] Subsequently, appellant filed a petition to modify the support order alleging that he had quit his second job. Shortly thereafter, appellant was laid off from his primary job and he filed a second petition to modify. The petitions were consolidated for hearing. The Hearing Officer recommended that the order be reduced to $300.00 per month plus $150.00 on arrears of $7,501.00. Appellant's exceptions were denied and an order adopting these recommendations was entered on December 19, 1986. This timely appeal followed.

The standard of review of a support order is a narrow one. We defer to the order of the trial court unless there is a clear abuse of discretion. An abuse of discretion is not merely an error of judgment. Only if the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence is discretion abused. *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985).

1. The issue raised by the dissent of whether "the support order should have been increased due to the discovery that Mr. Akers had been working a second job" is not presently before this court. That determination was made by the prior order which was not appealed by Mr. Akers. Furthermore, our Supreme Court has clearly stated that parents "have an obligation to share with their children the benefit of their financial achievement." *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984); see also, *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985). The children would benefit from father's increased income if the parents were still married; we see no reason why their divorce should deprive the children of this benefit.

4

We cannot, of course, usurp the trial court's function as fact finder. *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984). Under this standard, we will therefore address appellant's contentions.[2]

■ Appellant first complains that the hearing court erred by failing to consider evidence that he was unable to continue to work at his second job. We cannot agree. Clearly, the trial court did consider the evidence presented by appellant. Just as clearly, however, the trial court did not believe appellant's testimony that he quit this job due to health reasons. It is well-settled that the finder of fact may accept or reject all or any portion of a witness's testimony. *Commonwealth ex rel. Lutz v. Lutz*, 298 Pa.Super. 473, 444 A.2d 1281 (1982). Such a decision is clearly within the discretion of the trial court and we are without power to substitute our credibility determination for that of the trial court. *Semasek v. Semasek, supra.*

■ Appellant next complains that the trial court erred in imputing an earning capacity to appellant rather than basing the support order on actual income. Of course, the general rule is that it is the earning capacity, not the actual earnings, of the parent which is the determinative factor in ascertaining the ability to pay support. *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287 (1976). Unless appellant fits into an exception to this general rule, we cannot say that the trial court abused its discretion. Appellant argues that his situation should be considered under the exception that determines support by actual earnings in situations where income is reduced involuntarily, i.e., through illness, layoff, or some other factor over which the parent had no control. *See, e.g., Commonwealth ex rel. Burns v. Burns*, 251 Pa.Super. 393, 380 A.2d 837 (1977). The trial court,

2. Two of the issues raised on appeal were not considered at the trial level: whether the court erred by denying appellant a continuance to present expert testimony and whether the court erred in calculating the effect of a second job on appellant's unemployment compensation. These issues were not specifically raised in appellant's exceptions and are therefore waived. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

however, made a factual determination that appellant voluntarily quit his second job and therefore that appellant does not fit into this exception to the general rule. Since this determination is supported by evidence, we cannot reverse it. *Semasek v. Semasek, supra.* We cannot therefore conclude that the trial court abused its discretion in considering appellant's earning capacity.

In connection with this argument, we would further note that appellant appears to have misread both the Hearing Officer's recommendation and the trial court's opinion. We do not perceive either the Hearing Officer or the trial judge to have imputed an earning capacity equivalent to what appellant earned at his second job. Rather, the amount of support was determined by comparing the county guideline amounts for both appellant's actual income from unemployment compensation and the amount of income he had previously obtained from his second job and arriving at a support obligation in between those two figures. As noted in the trial court's opinion, the support order is only $5.00 higher than the guidelines recommend for someone with appellant's actual income.[3] We are hard-pressed to conclude that a deviation of $5.00 per month is an abuse of discretion under the circumstances presented here.

Appellant's claim that the trial court did not consider either his obligation to support his present family or the contribution of an adult child to appellee's household is without support in the record. Indeed, in its opinion, the trial court specifically stated that it did assume both contribution to the household's income by the adult child and reduction in the household's expenses on account of that child. There is, simply, no support for the contention that appellant's current obligations were not considered.[4]

3. These guidelines recommend $175 to $295 per month for appellant's actual income and $290 to $430 per month for the combined amounts of appellant's unemployment and previous earnings from his second job.

4. We note that this is not a situation where the trial court refused to find a change in circumstances due to the birth of a child in the second marriage. Appellant's child to his second wife was, at the time

■ Finally, appellant claims that the trial court erred in changing the monthly amount which appellant must pay toward his arrearages.[5] We cannot agree. The Support Act provides that the court may, at any time, remit, correct or reduce the amount of any arrearages. 42 Pa.C.S. § 6710. Considering the total amount of the arrearages, and the reduction in the monthly support amount, we cannot say that the trial court abused its discretion in increasing the monthly amount appellant must pay toward the arrearages. *See, Commonwealth ex rel. Banks v. Banks*, 330 Pa.Super. 128, 478 A.2d 1387 (1984) (Payment term for arrearages shall not be protracted, even where total amount is substantial.)

Order affirmed.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

I respectfully dissent from the majority's decision because I do not believe that the support order should have been increased due to the discovery that Mr. Akers had been working a second job. A person's ability to pay support should be calculated only from his or her earning capacity at one full-time job.

In the instant matter, Mr. Akers was working forty hours a week at the United States Steel Corporation (US Steel) as a billing control clerk. In addition, from January, 1983 until April, 1986 Mr. Akers was working approximately thirty hours a week at the Pittsburgh Civic Arena. His duties at the arena included ushering, acting as a security guard, and various maintenance tasks.

of the reduction hearing, eleven years old. Therefore, we may assume that appellant's obligations to that child have been considered in the prior proceedings setting the support amount which appellant sought to reduce.

5. Appellant does not attack the total amount of arrearages, which had been set in a prior proceeding. Rather, he appears to argue that the court was without power to change the monthly amount he must pay on those arrearages.

Mr. Akers failed to disclose to the court the fact that he was working at the Pittsburgh Civic Arena. Consequently, his support order was based only upon his primary full-time job at US Steel. In January, 1986, however, Mrs. Akers filed a petition for an increase in child support alleging that Mr. Akers had deliberately concealed his income from his part-time employment. On April 3, 1986, at a modification hearing held pursuant to the petition, the hearing officer, finding that Mr. Akers had indeed misrepresented his income, increased the monthly support order to $450.00 per month and directed him to pay $75.00 per month on arrearages calculated to be $8,350.00,[1] retroactive to 1983. This amount of arrearages represented the accumulated support obligation resulting from the appellant's unreported income as well as the result of a dispute over the paternity of one child.[2] Mr. Akers filed exceptions to the new support order, but the exceptions were denied on May 23, 1986.

Subsequently, Mr. Akers filed a petition to modify the support order claiming that he had resigned from his part-time job at the Pittsburgh Civic Arena as of April 22, 1986 based on his psychologist's advice, and that he would be laid off from his full-time employment at US Steel effective September 5, 1986. On October 28, 1986, a modification hearing was held. The hearing officer determined Mr. Akers had a total earning capacity of $1,467.00 per month. Of this amount, $967.00 represented the unemployment compensation Mr. Akers was receiving due to his lay-off at US Steel; the remaining $500.00 was income imputed to Mr. Akers for his employment at the Pittsburgh Civic Arena. The hearing officer ordered Mr. Akers to pay $300.00 per month in support (a reduction of $150.00) and $150.00 per month on the arrearages (an increase of $75.00). Timely exceptions to this order were filed and dismissed.

1. Later the court discovered a miscalculation in the arrearages and decreased the amount to $7,500.00.

2. $4,350.00 of the $8,385.00 arrearages was based on Mr. Akers' unreported second income.

8

Unlike the majority in this case, I cannot condone the gross injustice practiced by the trial court which, in effect, has forced appellant to work two jobs. While one's initial reaction when faced with a case where the husband has deliberately hidden his second income from the trial court is to find him to be in contravention of the support laws, I find that closer consideration leads one to the realization that the courts are penalizing a man for being more industrious than is necessary to survive.

Here, Mr. Akers' initial support payment was properly calculated based on his full-time employment at US Steel. Subsequently, he opted to use his free time each week to work a second job to earn extra money. In working over forty hours each week, Mr. Akers undoubtedly had to sacrifice much of his own private time and the time he would have had to spend with his present family. I cannot accept the idea that the appellant's extra time has become subject to the court's control simply because he chose to spend it at a second job. The court could not order Mr. Akers to work a second job initially and it should not be able to force him to continue that employment once he has decided that the second job no longer profits him, financially or otherwise.

I would remand for modification of the support order so that Mr. Akers' payments are based only on his earning capacity at one full-time job and for commensurate reduction in the amount of his payment toward the arrearages. Had appellant timely appealed from the determination of the arrearage amount, I would have remanded to reduce the arrearage in the amount owed, due to Mr. Akers' part-time employment at the Civic Arena.